IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD FRIEDMAN, | ) | CASE NO. 1:23-cv-00507 |
| | ) | |
| Plaintiff, | ) | JUDGE DANIEL A. POLSTER |
| vs. | ) | |
| | ) | **PLAINTIFF'S BRIEF IN** |
| DENIS MCDONOUGH, | ) | **OPPOSITION TO DEFENDANT'S** |
| Secretary of Veterans Affairs, | ) | **PARTIAL MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |

**PRELIMINARY STATEMENT**

Defendant's motion raises a single issue: Whether Plaintiff's constructive discharge claim is reasonably related to his suspension from employment, such that Plaintiff's EEO complaint alleging the suspension was discriminatory satisfies the exhaustion of administrative remedies requirement with respect to the constructive discharge claim.

**STATEMENT OF FACTS**

Plaintiff Howard Friedman is a physician. He began his career with the Veterans Administration ("VA") in 2002. For approximately eighteen (18) years Dr. Friedman served as the Medical Manager at the VA's Lake County Community Based Outpatient Clinic. On or about February 9, 2021 the VA summarily suspended Plaintiff's clinical privileges, barred him from practicing medicine at the VA pending investigation, and informed him that the investigation could result in his suspension being converted to a revocation of his privileges and, therefore, termination from employment. The VA's investigation was supposed to be accomplished within thirty (30) days. Instead, Dr. Friedman's suspension continued for the next six months, during which time he

did not return to work. (Declaration of Howard Friedman ("Friedman Decl."), Exhibit 1 hereto, at ¶ 1, and letter dated February 9, 2021, attached to Friedman Decl. as Exhibit A.)

On or about March 26, 2021 Dr. Friedman filed a formal complaint of discrimination with the VA's EEO office. (Defendant's Exhibit A, p. 2.) The EEO complaint alleged the suspension (and other matters) were because of age and religion discrimination. (Id.) At that time Attorney Joshua Kahn represented Dr. Friedman. (Friedman Decl., ¶ 2.) Melissa Senatus was the Investigator assigned to Dr. Friedman's EEO complaint. (Defendant's Exhibit A, pp. 1, 6.) On or about August 18, 2021 Plaintiff's supervisor, Dr. Corinna Falck-Ytter, met with Dr. Friedman and his wife Ibojka, and presented him with a Notice of Proposed Removal. At this meeting Dr. Falck-Ytter told Dr. Friedman and Ibojka outright that he would in fact be terminated from employment at the end of August. (Friedman Decl. at ¶ 3; I. Friedman Decl. at ¶ 1.)

Believing the proposed removal was a continuation of discriminatory treatment, the same day Dr. Friedman and his wife called Investigator Senatus and told her he had been given a Notice of Proposed Removal and that he had been told he would be terminated at the end of the month. (Friedman Decl., at ¶ 4; I. Friedman Decl., attached as Exhibit 2, at ¶ 2.) Dr. Friedman discharged Attorney Kahn on August 23, 2021 and informed EEO Investigator Senatus that he no longer had an attorney. (Friedman Decl. at ¶ 5.) Having informed Investigator Senatus about his forthcoming termination, Dr. Friedman and his wife assumed Investigator Senatus would investigate both the suspension claim and his discharge claim. (Id. at ¶ 6; I. Friedman Decl., ¶ 3.)

Without the aid of a lawyer, for approximately the next week and a-half Dr. Friedman considered the impact that termination would have on his career and his life.

Facing the certainty of removal, a report being made to the NPBD and the State Medical Board of Ohio, the consequent and very real threat of losing his medical license, and the financial

impact of being discharged, Dr. Friedman resigned his position with the VA on or about August 29, 2021.[1]

## LAW AND ARGUMENT

**I.** **Summary Judgment Standard.**

A district court may grant summary judgment only when materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). To obtain summary judgment, the moving party bears the burden to meet this standard. Rafferty v. Trumbull Cnty., 915 F.3d 1087, 1093 (6th Cir. 2019).

Summary judgment is inappropriate if there are genuine disputes of material fact—i.e., the parties dispute any fact that has the potential to affect the outcome of the case under the governing substantive law. Palma v. Johns, 2022 WL 4080629, *3 (N.D. Ohio Sept. 6, 2022)(citing Baynes v. Cleland, 799 F.3d 600, 606-07 (6th Cir. 2015)). When determining whether a genuine dispute of material fact exists, a district court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. Id. (citing Wright v. City of Euclid, Ohio, 962 F.3d 852, 864 (6th Cir. 2020)). The court may not weigh the parties' evidence or resolve any factual disputes. Id. To obtain summary judgment, the moving party bears the burden to meet this standard. Id. (citing Rafferty v. Trumbull County, 915 F.3d 1087, 1093 (6th Cir. 2019)).

**II.** **Sixth Circuit Cases Make Clear That Dr. Friedman Exhausted Administrative Remedies With Respect To His Constructive Discharge Claim.**

---

[1] The merits of Dr. Friedman's constructive discharge are not at issue at this time.

A.      **The Exhaustion Requirement.**

A person seeking to bring a discrimination claim under Title VII or the Age Discrimination in Employment Act (ADEA) in federal court must first exhaust administrative remedies. Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S.Ct. 1961 (1976).[2] The requirement, however, is not meant to be overly rigid, nor should it " 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.' " Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006)(quoting EEOC v. McCall Printing Co., 633 F.2d 1232, 1235 (6th Cir.1980)); Kilpatrick v. HCA Hum. Res., LLC, 838 F. App'x 142, 146 (6th Cir. 2020). As a result, the EEOC complaint should be liberally construed to encompass all claims " 'reasonably expected to grow out of the charge of discrimination.' " Randolph, supra, Kilpatrick, supra (both quoting Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir.1992)). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Davis v. Sodexho, 157 F.3d 460, 463 (6th Cir.1998).[3] In other words, an uncharged claim is considered exhausted "if the relevant agency

---

[2] Defendant is correct that federal sector age discrimination claimants can proceed directly to federal court instead of going through the EEO administrative process, but the point is irrelevant. Here, Dr. Friedman went through the EEO process and did so in a timely manner, including filing this case within 90 days of receiving a Final Agency Decision. In any event, Defendant agrees that the same exhaustion analysis applies to Title VII and ADEA claims. (Defendant's Brief at 6.)

[3] The EEOC applies the same rule. See Breanne H. v. Dept. of Veterans Affairs, EEOC DOC 2018000033, 2019 WL 1397748 (Mar. 8, 2019)(a later claim is like or related to the original complaint if it could have reasonably been expected to grow out of the original complaint during the investigation); Sanchez v. Standard Brands, Inc., 431 F. 2d. 455, 466 (5th Cir. 1970)(EEO complaint can encompass "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case..."); Morman v. Dept. of Defense, EEOC DOC 01941643, 1985 WL 260660 (Jan. 9, 1995);(recognizing the EEOC has held that a complaint is merely a starting point for an agency's investigation and that an investigation ultimately may include the development of other issues that are discovered during

4

discovers evidence of the discrimination underlying the uncharged claim during their investigation into the plaintiff's charge. Id. That is precisely what happened here – Dr. Friedman advised the EEO Investigator on August 18, 2021 that he was going to be terminated at the end of August 2021 and the investigation continued until September 13, 2021.

      **B.**    **Dr. Friedman's Constructive Discharge Claim Is One Reasonably Expected To Grow Out Of The Charge Of Discrimination Based On His Suspension.**

The Sixth Circuit recognized in Zanders v. O'Gara-Hess & Eisenhardt Armoring Co., 952 F.2d 404 (6th Cir. 1992), that an uncharged termination complaint was reasonably within the scope of an EEOC investigation of a timely filed suspension charge. The plaintiff in Zanders filed an EEOC charge of race-based discrimination on September 19, 1988, because of his suspension. Upon his return to work the next day, his boss fired him. Zanders asserted that shortly thereafter, he informed the EEOC of his discharge and his belief that his termination was retaliatory in nature. Neither the EEOC nor the OCRC, with whom Zanders had dealt directly, filed an amended or separate charge relating to the alleged wrongful termination. More than a year later, in December of 1989, Zanders filed a formal charge with the EEOC alleging wrongful discharge. The EEOC, however, refused to entertain this claim because it was filed over three hundred days after the date of the alleged discrimination.[4] The district court dismissed the wrongful termination charge for the same reason.

---

the course of the investigation). See also Jones-Mason v. Dept. of Energy, EEOC DOC 01A14338, 2002 WL 1590260 (July 11, 2002)(the federal sector EEOC hearing process is intended to be an extension of the investigative process, designed to ensure the parties have a fair and reasonable opportunity to explain and supplement the record).

[4] Private sector employees in deferral states must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory event. See generally Amini v. Oberlin Coll., 259 F.3d 493, 498 (6th Cir. 2001).

The Sixth Circuit vacated the district court's decision and remanded for further proceedings. According to the Sixth Circuit, Zanders' suspension and termination indicated one continuing course of action by the employer and, therefore, "the nexus between the charges is very strong" and "essentially part of the same claim." As in the present case, Zanders informed the investigating agency, the EEOC, of his discharge during the course of its investigation, thereby putting it on notice of the termination claim. Just like the present case, the EEOC did not amend the complaint. Moreover, as in the present case, the employer suspended Zanders and never let him return to work before the termination event occurred. For these reasons, the wrongful termination charge was "rooted in the suspension claim, and may imply a continuing course of conduct." Consequently, the Sixth Circuit held that termination complaint was reasonably within the scope of the EEOC investigation of the suspension charge, such that it was not barred by a failure to exhaust administrative remedies. See also Bryan v. Prince George's Cnty., 2011 WL 2650759 (D. Md. July 5, 2011), aff'd, 484 F. App'x 775 (4th Cir. 2012)(exhaustion doctrine did not bar uncharged claims concerning termination because "the termination was merely the culmination of a process that began with Bryan's suspension, and the suspension and termination rest on the same set of facts. Consequently, the core contention is the same for both events."); Richmond-Jeffers v. Porter Twp. Sch. Corp., 2009 WL 684767 (N.D. Ind. Mar. 11, 2009)(link between plaintiff's suspension and her subsequent termination withstood exhaustion challenge because "the termination naturally 'grew out' of the suspension" and "the suspension is more naturally viewed as the first step in a two-step process, rather than being a separate, distinct event from the termination"); Shums v. New York City Dep't of Educ., 2006 WL 8437471 (E.D.N.Y. Apr. 3, 2006)(allowing termination claim to proceed because disciplinary hearings were conducted with possible termination in mind and, therefore, were reasonably related to suspension); Johnston

v. O'Neill, 272 F. Supp. 2d 696 (N.D. Ohio 2003)( rejecting exhaustion defense and denying summary judgment on uncharged constructive discharge claim tied to charged age discrimination and retaliation claims);[5] Benard v. Washington Cnty., 465 F. Supp. 2d 461, 472 (W.D. Pa. 2006)(uncharged termination claim was based on same facts as charged suspension claim and fell within the scope of administrative charge, or the investigation which could reasonably be expected to grow out of it); Bryan v. Prince George's Cnty., 2011 WL 2650759, *4 (D. Md. July 5, 2011), aff'd, 484 F. App'x 775 (4th Cir. 2012)(termination was merely the culmination of a process that began with plaintiff's suspension, suspension and termination rested on same set of facts, and core contention was the same for both events, such that plaintiff exhausted his claims concerning his termination and it was appropriate to consider that claim on the merits); Poweleit v. DeJoy, 2023 WL 2743777, *3 (S.D. Ohio Mar. 31, 2023)(not "a stretch to think that an employee complaining about discrimination who is then suspended may also be terminated ***."); Morales v. NorthShore Univ. HealthSystem, 2022 WL 313755, *3 (N.D. Ill. Feb. 2, 2022) (finding that "termination claims could be reasonably expected to grow out of an investigation into [a plaintiff's] allegations involved in her suspension claims");

It matters not that Zanders involved a straight termination claim as opposed to a constructive discharge claim, because the law treats the resignation giving rise to a claim based on a constructive discharge as tantamount to an actual discharge. Green v. Brennan, 578 U.S. 547, 555, 136 S. Ct. 1769 (2016). What mattered in Zanders was whether the plaintiff's termination claim (which is the equivalent of a constructive discharge claim) was reasonably within the scope

---

[5] On appeal, the Sixth Circuit did not address the district court's decision rejecting the exhaustion defense with respect to plaintiff's constructive discharge claim, and only addressed that claim on the merits. Johnston v. O'Neill, 130 F. App'x 1 (6th Cir. 2005). The Sixth Circuit only addressed the exhaustion defense regarding an uncharged claim for non-selection for a position not brought up during administrative proceedings.

of the charged suspension claim. On facts nearly on all fours with the present case, the Sixth Circuit decided it was. The same is true here. The VA suspended Dr. Friedman in February 2021 pending investigation, which continued into August 2021. Dr. Friedman never returned to work. The investigation led directly to the Notice of Proposed Removal and Dr. Friedman being told outright by his supervisor on August 18, 2021 that he would be terminated at the end of August 2021. Dr. Friedman resigned as a result. Thus, the suspension and constructive discharge claims comprise one continuing course of action by the employer, and are essentially part of the same claim. Just as in <u>Zanders</u>, the termination claim is rooted in the suspension claim, and grew from the same subject matter that gave rise to Dr, Friedman's suspension. The suspension and the termination were part of a two-step process arising from the same core set of facts having a strong nexus. What occurred here describes an escalating progression of events, not bounded by discrete, unrelated actions.

      The Sixth Circuit's decision in <u>Zanders</u> is all the more instructive because the Court distinguished <u>Cedar v. Premier Indus. Corp.</u>, 869 F.2d 1489 (6th Cir. 1989), the only Sixth Circuit case cited by Defendant. In <u>Cedar</u>, the plaintiff filed a discrimination charge based on his <u>demotion</u>, after which he resigned. He was later reinstated to his former position. The court held that the demotion claim, to which plaintiff tried to tether his constructive discharge claim, was rendered moot by his reinstatement. Moreover, the plaintiff failed to state any allegations that his resignation stemmed from discriminatory animus, which is not the case here. Most importantly, the Court recognized that "[a]t bottom, a demotion and the facts surrounding it are distinct from a constructive discharge and the circumstances supporting it," and further stating "we find a claim of constructive discharge to be outside the scope of an EEOC charge concerning discriminatory

8

demotion." Tellingly, Defendant in its Brief did not include this important language demonstrating that Cedar is limited to demotion cases, not suspension cases.

Defendant's reliance on Magyar v. United States Postal Serv., 2019 WL 1989207 (E.D. Mich. May 6, 2019), is likewise unavailing. In Magyar, plaintiff filed a union grievance over his suspension and contacted the EEOC. When plaintiff received a Notice of Removal he filed a second grievance and resigned from the postal service. The union and the postal service reached a final settlement on both grievances, settling plaintiff' second grievance relating to the Notice of Removal by rescinding it and expunging both the suspension and the Notice of Removal from postal service files. Meanwhile, plaintiff's EEOC case moved forward. Plaintiff submitted an investigatory affidavit to the EEOC again asserting his suspension was discriminatory and retaliatory, and also that the Notice of Removal was discriminatory. Following completion of the EEOC process, plaintiff sued in district court but did not plead a theory of constructive discharge. The court, therefore, did not even consider whether the constructive discharge claim was within the scope of his suspension. The court granted defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim of discrimination because Plaintiff failed to allege he was treated less favorably than a similarly-situated non-member of the class and because, not having pled constructive discharge, his retirement and settlement of the union grievances meant he had not suffered an adverse employment action.

The only other case cited by Defendant, Slayden v. Ctr. for Behav. Med., 53 F.4th 464 (8th Cir. 2022), fares no better. The substantive allegations in plaintiff's charge were that he experienced a hostile work environment. There was no suspension. Plaintiff's constructive discharge claim was based on his hostile work environment allegations. Relying on Eighth Circuit precedent, the court stated that a constructive discharge stands separate and distinct from the

continuing violation of a hostile work environment and, therefore, could not be reasonably related to his charge allegations concerning hostile work environment.[6]

For the reasons stated above, Plaintiff's constructive discharge claim is within the scope of his discriminatory suspension charge.

### C. Dr. Friedman *Was* Acting Pro Se And Is Entitled To A Lenient Standard.

Defendant glosses over the fact that Dr. Friedman did not have an attorney representing him during the time period that is actually relevant to the issue under consideration. Dr. Friedman advised VA EEO Investigator Melissa Senatus that as of August 23, 2021 attorney Joshua Kahn was no longer representing him. Dr. Friedman agrees the record indicates Ms. Senatus did not conclude her investigation until September 13, 2021. (Defendant's Brief at 3.) Consequently, Dr. Friedman was acting *pro se* from August 23, 2021 to September 13, 2021. According to Defendant, Dr. Friedman retired from the VA on August 29, 2021. It was that event which gave rise to a constructive discharge claim. But, Dr. Friedman did not have a lawyer at that critical time, and he is not a lawyer. Defendant's tacit suggestion that Dr. Friedman's attorney never attempted to amend the EEO claim during the investigation is simply incorrect. (See Defendant's Brief at 3.)

### CONCLUSION

For the reasons set forth above, Plaintiff Howard Friedman respectfully requests that the Court deny Defendant's Partial Motion for Summary Judgment.

Respectfully submitted,

*/s/ David W. Neel*
David W. Neel (0033611)
David W. Neel, LLC
13800 Shaker Blvd., Ste. 102

---

[6] The court's reference to an Eighth Circuit rule seeming to require the EEOC charge to assert that a constructive discharge had happened or was about to happen, appears to have no counterpart in the Sixth Circuit.

Cleveland, Ohio 44120
Telephone: (216) 522-0011
Telecopier: (844) 548-3570
dwneel@neellaw.com

*Attorney for Plaintiff Howard Friedman*

## CERTIFICATE OF SERVICE

This is to certify that on September 18, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David W. Neel*
David W. Neel (0033611)