IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HOWARD FRIEDMAN, ) | Case No. 1:23-cv-00507-DAP |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE DAN AARON POLSTER |
| v. ) | |
| ) | |
| DENIS MCDONOUGH, ) | **OPINION AND ORDER** |
| Secretary of Veterans Affairs ) | |
| ) | |
| Defendant. ) | |

**I.       Introduction**

This matter comes before the Court on Defendant, Secretary of Veterans Affairs, Dennis McDonough's motion for partial summary judgment. ECF Doc. 15. Defendant argues he is entitled to summary judgment on Plaintiff Dr. Howard Friedman's constructive discharge claim because he did not exhaust that claim in his administrative filings with the EEOC. The Court has considered Defendant's motion, Plaintiff's brief in opposition (ECF Doc. 17), and Defendant's reply. ECF Doc. 18. Because Plaintiff did not administratively exhaust his constructive discharge claim, the Court GRANTS Defendant's motion for partial summary judgment. Plaintiff's remaining claims for adverse employment action based on age and religious discrimination are still pending.

II.     **Statement of Facts**

Dr. Howard Friedman is a physician who began his career with the Veterans Administration ("VA") in 2002. He served as the Medical Manager at the VA's Lake County Community Based Outpatient Clinic for approximately 18 years. ECF Doc. 17 at 1. Friedman alleges the discriminatory acts by the VA began on January 21, 2021, when his supervisor, Dr. Corinna Falck-Ytter, evaluated his performance as "unsatisfactory" based on improper "cutting and pasting" of histories in patient charts. He argues this is a common practice followed by physicians both within and outside the VA. ECF Doc. 1 at 4.

On or about February 9, 2021, the VA informed Plaintiff that his clinical privileges were summarily suspended and the VA would be investigating "clinical concerns" with his practice. ECF Doc. 1 at ¶ 17. Believing his suspension was improperly motivated by age and religious discrimination, Plaintiff filed a charge of discrimination with the VA's EEOC office on March 26, 2021. ECF Doc. 1 at ¶21. At the time Friedman filed his charge with the VA's EEOC office, he was represented by Attorney Joshua Kahn. ECF Doc. 17 at 2. His complaint alleged age and religious discrimination based on "disciplinary action (suspension)"; "evaluation/performance/appraisal", "pay and allowance (special pay)"; and "loss of credentials." ECF Doc. 15 at 2.

Dr. Friedman had filed his EEOC charge on March 26, 2021, shortly after he was suspended. During his suspension, he was not working but was waiting for both Defendant and the EEOC to conduct their investigations. Defendant completed its investigation in August 2021. Plaintiff's supervisor, Dr. Falck-Ytter, met with Plaintiff and presented a Notice of Proposed Removal on August 18, 2021.

2

The EEOC's investigation was still ongoing when Plaintiff received the Notice of Proposed Removal from Defendant. Plaintiff alleges that he and his wife called the EEOC Investigator on the same day and told her that he had been given a Notice of Proposed Removal and had been told he would be terminated at the end of the month. ECF Doc. 17-1. Plaintiff did not wait until his employment was officially terminated. He resigned from his position at the VA on August 29, 2021. ECF Doc. 1 at ¶ 26. A few days earlier, on August 23, 2021, Plaintiff had fired the attorney he had retained to file his EEOC charge. ECF Doc. 1 at ¶ 25.

On September 13, 2021, the EEOC investigator concluded her investigation. The investigator found no evidence of discriminatory actions on behalf of the VA. Rather, the investigator found evidence of Friedman performing unsatisfactory work. ECF Doc. 15-2 (Exhibit A – EEOC Investigative Report). Defendant argues that Plaintiff never raised his constructive discharge claim during the EEOC investigation. Plaintiff had initially requested a hearing before an Administrative Law Judge, but later withdrew that request and sought a final agency decision, which was issued on December 21, 2022. ECF Doc. 1 at ¶8.

**III.     Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). As a result, "[c]onclusory and unsupported allegations, rooted in speculation are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs of N. Ky.*, 632 F. App'x 839, 847 (6th Cir. 2015), citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003); see also Fed. R.

3

Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 –86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323 –24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e). And unsupported, self-serving affidavits are insufficient to create an issue of fact sufficient to survive summary judgment. *Brooks v. American Broadcasting Companies*, 999 F.2d 167, 172 (6th Cir. 1993); *Wolfe v. Vill. of Brice, Ohio*, 37 F.Supp.2d 1021, 1026 (S.D. Ohio 1999).

**IV.	Law & Analysis**

In order to bring a Title VII claim, the exhaustion of administrative remedies is a condition precedent. *Love v. Pullman Co.*, 404 U.S. 522, 523, 92 S. Ct. 616, 30 L.Ed.2d 679 ((1972). Courts generally limit the claims in civil suits to those presented in the administrative complaint. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (citing

4

*Brown v. General Serv. Administratio*n, 425 U.S. 820, 832, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976)). This rule serves the dual purpose of giving the employer information concerning the conduct about which an employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359 (6th Cir. 2010), citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). So, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role. *Id.* Failure to properly include discriminatory actions in an administrative complaint under Title VII is grounds for dismissal of those claims in federal court. *See Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441 (6th Cir. 2018) (dismissing plaintiff employee's Title VII claims unrelated to those presented in his EEOC charge because he failed to exhaust his administrative remedies).

Courts may permit claims to proceed in federal court even if they were not explicitly raised in the employee's EEOC complaint, but only if such claims were reasonably expected to grow out of the EEOC charge of discrimination. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2022) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). Here, it may have been reasonably expected that Plaintiff's employment would be terminated. However, the same cannot be said of Plaintiff's constructive discharge claim. At the time of his resignation, Plaintiff had not alerted the EEOC investigator that the conditions of his employment were so intolerable that he could not continue. Plaintiff should have either waited to be officially terminated or expressly notified the EEOC investigator of his constructive discharge claim.

Plaintiff's March 26, 2021 EEOC complaint raised four claims: suspension of clinical privileges, lowered performance appraisal, recission of special pay, and temporary loss of access to the VA computer systems. There was no reason for the EEOC investigator to investigate allegations of constructive discharge. In fact, over a year passed before Plaintiff attempted to amend his EEOC charge to include such a claim. ECF Doc. 15 at 7. Neither Defendant nor the EEOC investigator were on notice of Plaintiff's assertion of this claim.

In order to show a claim of constructive discharge is within the scope of the original EEOC investigation, a plaintiff must show a specific amendment of the charge to include a constructive discharge claim, or extensive factual allegations of intolerable working conditions which clearly point to the unnamed legal conclusion that a constructive discharge has occurred. *Cedar v. Premier Industrial Corp.*, 869 F.2d 1489 (6th Cir. 1989). Friedman has provided neither. He did not include this claim in his original EEOC charge or allege intolerable working conditions, thereby alerting the EEOC investigator of the potential for such a claim. In short, Plaintiff failed to administratively exhaust his constructive discharge claim.

Plaintiff argues that the exhaustion requirement is not meant to be overly rigid and should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980). He contends an uncharged claim should be considered exhausted if an agency discovers evidence of the discrimination underlying the uncharged claim during its investigation. *Id.* However, even if his contention is correct, the EEOC investigator found no evidence of conduct supporting a constructive discharge claim during her investigation of Plaintiff's charge. The Investigative Report issued by the investigator stated that one of the VA employees she interviewed was not

even aware of Friedman's age or religion. ECF Doc. 15-2 (Exhibit A – EEOC Investigative Report). However, the interviewed employees *were* aware of Plaintiff's unsatisfactory work, such as erroneously billing multiple providers twice, excessive copy and paste in notes, and poor quality of medical care provided. *Id.*

Plaintiff cites *Zanders v. O'Gara-Hess & Eisenhardt Armoring Co.*, 952 F.2d 404 (6th Cir. 1992), for the proposition that an uncharged termination claim was reasonably within the scope of a timely-filed EEOC charge for suspension. In *Zanders,* the plaintiff filed a race-based discrimination charge after his suspension. He was fired the next day. He later argued he had informed the EEOC of his discharge and that it was retaliatory in nature. Similar to Friedman, the plaintiff in Zanders filed a formal charge with the EEOC alleging wrongful discharge after the time for filing had passed. The EEOC refused to consider this claim because it was filed over 300 days after the alleged discrimination, and the district court dismissed the claim for the same reason. However, the Sixth Circuit vacated the district court's decision and held that plaintiff's suspension and termination represented one continuing course of action. The Court reasoned the nexus between the charges was very strong, essentially part of the same claim. For this reason, Zanders' wrongful discharge claim was held to be reasonably within scope of the EEOC investigation of the suspension charge and not barred by a failure to exhaust administrative remedies. *See also Bryan v. Prince George's Cnty.*, 2011 WL 2650759 (D. Md. July 5, 2011), aff'd F. App'x 775 (4th Cir. 2012); *Shums v. New York City Dep't of Educ.*, 2006 WL 8437471 (E.D.N.Y. Apr. 3, 2006).

*Zanders* is inapposite to the facts of this case. Zanders was laid off by his company the day after he filed his EEOC charge. Friedman was never terminated—he chose to resign, and he did so months after filing his EEOC charge for age and religious discrimination. The adverse

employment conduct reported in his EEOC charge was not one continuing course of conduct with his resignation.

Friedman argues that the law treats a constructive discharge the same as an actual discharge. *Green v. Brennan*, 578 U.S. 547, 555, 136 S. Ct. 1769 (2016). While this may be true, it is only when working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Id.* In *Green,* the Supreme Court held that an employee's resignation can be considered a discriminatory act of the employer, but *only* when the employer subjected an employee to intolerable working conditions *with the discriminatory intent to force the employee to resign. Id.* at 565 (Alito, concurring) (first emphasis added). Then, when an employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge.

Here, Friedman did not advice the EEOC that his working conditions were intolerable. *Id.* at 555. In fact, Friedman was not even working when he received his Notice of Intent to Remove. He has not alleged any derogatory conduct or comments by his employer based on his age and/or religion. The August 18, 2021 Notice of Proposed Removal was not evidence of intolerable working conditions; it was evidence that the VA was planning on terminating his employment. And there was clearly no temporal connection between his EEOC charge and his resignation. If the VA had actually terminated his employment and Plaintiff could show that it was improperly based on his age, religion or retaliation for filing an EEOC charge, he would have a basis for asserting a wrongful termination claim. However, these facts do not support a constructive discharge claim. Nor could the EEOC investigator or Defendant have anticipated such a claim based on the facts reported by Plaintiff.

Friedman also argues that Defendant's reliance on *Cedar v. Premier Industrial Corp.*, 869 F.2d 1489 (6th Cir. 1989) is inappropriate as that case applied only to demotion, not suspension cases. The Court disagrees. The *Cedar* Court recognized that a demotion is distinct from a constructive discharge. But the Court also affirmed that constructive discharge requires an inquiry not only into the employer's conduct but also its effect on the employee and other reasons for the employee's actions. Absent a specific amendment of the charge to include a constructive discharge claim, or extensive factual allegations concerning intolerable working conditions, there is no reason to consider or investigate a constructive discharge claim. *Cedar*, 869 F.2d at 11. As stated before, Friedman never alleged intolerable working conditions in this case; there was no reason for the EEOC investigator or Defendant to consider a constructive discharge claim as part of his charge.

Friedman also argues Defendant's reliance on *Magyar v. United States Postal Serv.*, 2019 WL 1989207 (E.D. Mich. May 6, 2019) and *Slayden v. Ctr. For Behav. Med.*, 53 F.4th 464 (8th Cir. 2022) is unavailing. While the facts of *Maygar* are different, the Court recognized that, absent a specific amendment of the charge to include a constructive discharge claim or extensive factual allegations concerning intolerable working conditions, a claim of constructive discharge is outside the scope of an EEOC discrimination investigation. *United States Postal Serv.*, 2019 WL 1989207 at 17. And the fact that *Slayden* is an Eighth Circuit case does not negate the strength of its reasoning.

Lastly, both Friedman and the Defendant disagree as to whether Friedman's administrative complaint should be liberally construed. Defendant argues that Friedman was represented by counsel during the EEOC investigation and when he submitted his original EEOC complaint. ECF Doc. 15 at 8. The Sixth Circuit recognizes the importance of liberally reading

9

administrative complaints prepared by pro se litigants. *Dixon v. Ashcroft*, 392 F.3d 212, 219 (6th Cir. 2004). However, it has refrained from affording the same leniency to plaintiffs assisted by legal counsel. *See Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991) (Liberal construction is not necessary where the claimant is aided by counsel in preparing his charge). Joshua Kahn was acting as Friedman's counsel when he filed the EEOC complaint and through most of the EEOC investigation. It was not until after Friedman resigned on August 29, 2021 that he informed the investigator that he was no longer represented by counsel. ECF Doc. 15 at 9 (citing Compl. ¶¶ 25, 26 Page ID #5; Invest. Report p.3.) Defendant argues this court should not afford Plaintiff the same leniency extended to typical *pro se* plaintiffs.

Friedman argues he was acting *pro se* and is entitled to a lenient standard. He argues that he did not have an attorney representing him when he resigned from the VA on August 29, 2021. Friedman advised VA EEOC investigator Melissa Senatus that as of August 23, 2021 attorney Joshua Kahn was no longer representing him. Friedman argues he was acting *pro se* from August 23, 2021, to September 13, 2021, when Ms. Senatus concluded her investigation.

In *Ang*, the Court held leniency should not be applied since the plaintiff was assisted by counsel throughout the administrative investigation and when he filed a charge. Similarly, in *Dixon*, the Court applied leniency because the plaintiff was not assisted by counsel when filing his EEOC complaint. Here, Friedman was represented by Joshua Kahn both when he filed his complaint and during almost the entirety of the investigation period.

The Court recognizes that Friedman was acting *pro se* when he resigned from the VA. It was at that point that he could have potentially amended his charge to include a constructive discharge claim. But even now when he is (again) represented by counsel, Plaintiff has failed to allege details of an intolerable working environment that would support a constructive discharge

claim. The Court is permitted to apply leniency to pro se litigants, but it cannot overlook the facts of the case. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). *Pro se* plaintiffs must still meet basic pleading requirements, and courts are not required to conjure allegations on their behalf. *See Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

In conclusion, Friedman has not shown that he exhausted his constructive discharge claim or that it arose out of the same course of conduct alleged in his EEOC charge. Although Friedman believed termination was the next and final step of the process, the VA did not officially terminate his employment and no adverse action had been taken against him at the time he resigned. ECF Doc. 18 at 3. Friedman did not report intolerable working conditions to the EEOC or that he had been forced to resign. It was not until August 29, 2022, one year after he resigned, that Friedman first made this allegation. A reasonable person could not expect that notifying the EEOC investigator of a Notice of Proposed Termination would be enough to alert her that a constructive discharge has occurred.

## V. Conclusion

Because Friedman did not exhaust his administrative remedies, his constructive discharge claim cannot be heard in federal court. There is no genuine dispute as to any material fact and Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim. However, Friedman's remaining claims for adverse employment action based on age and religious discrimination will proceed. Defendant Denis McDonough's, Secretary of Veterans Affairs, partial motion for summary judgment is GRANTED pursuant to Fed. R. Civ. P. 56 against Plaintiff Friedman.

IT IS SO ORDERED.

Dated: October 13, 2023          *s/Dan Aaron Polster*
                                  United States District Judge